IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRIAN SCOTT WILLIAMS, AP-9686, )<br>    Petitioner, )<br>                              )<br>    v.                            )<br>                              )<br>PENNSYLVANIA BOARD OF )<br>PROBATION AND PAROLE , et al., )<br>    Respondents. ) | Civil Action No. 05-1097 |

Report and Recommendation

I. Recommendation:

It is respectfully recommended that the respondents' Motion to Dismiss (Docket No. 6) be granted and that the petition of Brian Scott Williams for a writ of habeas corpus be dismissed and that a certification of appealability be denied for lack of a viable federal claim.

II. Report:

Presently before the Court of disposition is a motion to dismiss submitted on behalf of the respondents.

Brian Scott Williams, an inmate at the State Correctional Institution at Albion has submitted a petition for a writ of habeas corpus. On August 23, 2005, an Order was entered directing the respondents and the Attorney General of Pennsylvania to show cause, why the relief sought should not be granted.

Williams was convicted of involuntary deviate sexual intercourse and corruption of minors in the Court of Common Pleas of Mercer County, Pennsylvania, at Nos. 190.1, 190.4, 191.4, 192.1 and 193.3 of 1986. On September 29, 1986 he was sentenced to a period of thirteen

to twenty-six years of imprisonment.[1] However, it is not this conviction which he seeks to challenge but rather the actions of the Pennsylvania Board of Probation and Parole in denying his release on parole.

He challenged this determination in the Commonwealth Court of Pennsylvania on ex post facto grounds, and relief was denied on June 4, 2004. That denial was affirmed by the Pennsylvania Supreme Court on September 3, 2004 at No. 101 MAP 2004. Williams now comes before this Court raising the same argument.[2]

Appended to the petition, Williams has provided copies of the relevant decisions of the Pennsylvania Board of Probation and Parole. They demonstrate that on September 16, 1999 parole was denied on the basis that "the mandates to protect the safety of the public and to assist in the fair administration of justice cannot be achieved through your release on parole."[3]

On April 13, 2000, parole was again denied on the basis "that the mandate to protect the safety of the public and to assist in the fair administration of justice cannot be achieved through your release on parole."[4]

On August 17, 2000, parole was again denied on the basis "that the mandates to protect the safety of the public and to assist in the fair administration of justice cannot be achieved

---

[1] See; Petition at ¶¶ 1-5.

[2] The respondents suggest that the instant petition is time barred. However, at least as to the petitioner's latest application for parole, relief was denied by the Pennsylvania Supreme Court on September 3, 2004 and the instant petition was executed on June 2, 2005. Thus, it is not time barred.

[3] See: Exhibit A-1 to the petition.

[4] See: Exhibit A-2 to the petition.

through your release on parole."[5]

On April 26, 2001 parole was again denied on the basis "that the fair administration of justice cannot be achieved through your release on parole."[6]

Again on May 6, 2002 parole was denied on the basis "that the fair administration of justice cannot be achieved through your release on parole."[7]

On April 24, 2003, parole was again denied on the basis that:

Having considered all matters required pursuant to the Parole Act of 1941, as amended, 61 P.S. § 331.1 et seq., the Board of Probation and Parole, in the exercise of its discretion, has determined at this time that: your best interests do not justify or require you being paroled/reparoled; and, the interests of the Commonwealth will be injured if you were paroled/reparoled. Therefore, you are refused parole/reparole at this time. The reasons for the Board's decision include the following:

Your lack or remorse for the offense(s) committed.

The notes of testimony of the sentencing hearing.

Reports, evaluations and assessments concerning your physical, mental and behavior condition and history.

Your interview with the hearing examiner and/or board member.

Other factors deemed pertinent in determining that you should not be paroled: sex offender assessment board evaluation.

Lack of insight, predatory nature of crime, repeat sex offenders, continued sexual thoughts regarding one victim.[8]

---

[5] See: Exhibit A-3 to the petition.

[6] See: Exhibit A-4 to the petition.

[7] See: Exhibit A-5 to the petition.

[8] See: Exhibit A-6 to the petition.

The relevant Pennsylvania statute, 61 P.S. §331.21 does not create a mandatory expectation of release but rather has been determined to be a matter of grace.  Rogers v. Pennsylvania Board of Probation and Parole, 555 Pa. 285 (1999).  In the absence of a state mandated right of parole, parole is a matter of mere possibility and does not invoke a federally protected liberty interest.  Kentucky Department of Corrections v. Thompson, 490 U.S. 455 (1989). In Connecticut v. Dumschat, 452 U.S. 458 (1981), the Court recognized that where there is no liberty interest created, there is no constitutional basis for relief.  Since federal habeas corpus relief is premised on violations of constitutional proportion, no such factors exist here since the reasons for denying parole were based on the plaintiff's past conduct both inside and outside the institution unless the petitioner can demonstrate that the denial of parole was based on "race, religion, political beliefs, or ... frivolous criteria with no rational relationship to the purpose of parole such as the color of one's eyes, the school one attended, or the style of one's clothing."  Block v. Potter, 631 F.2d 233, 235 (3d Cir.1980).

The respondents contend that the petitioner has failed to exhaust the available state court remedies.

It is provided in 28 U.S.C. §2254(b) that:

An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

This statute represents a codification of the well-established concept which requires that before a federal court will review any allegations raised by a state prisoner, those allegations must first be presented to that state's highest court for consideration.  Preiser v. Rodriguez, 411

U.S. 475 (1973); Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484 (1973); Doctor v. Walters, 96 F.3d 675 (3d Cir. 1996).

It is only when a petitioner has demonstrated that the available corrective process would be ineffective or futile that the exhaustion requirement will not be imposed. Preiser v. Rodriguez, supra.; Walker v. Vaughn, 53 F.3d 609 (3d Cir.1995).

If it appears that there are available state court remedies, the court must determine whether a procedural default has occurred. If a procedural default has occurred, the court must determine whether cause or prejudice exists for the default, or whether a fundamental miscarriage of justice would result from a failure to consider the claims. Carter v. Vaughn, 62 F.3d 591 (3d Cir. 1995).

In construing § 2254(d)(1), the Court in Williams v. Taylor, 529 U.S. 362, 412-413 (2000) stated:

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

In Hameen v. Delaware, 212 F.3d 226, 235 (3d Cir. 2000), the Court determined:

> The Court in Williams v. Taylor held that "[u]nder the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." Williams v. Taylor, further held that "[u]nder the

5

'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." The "unreasonable application" inquiry requires the habeas court to "ask whether the state court's application of clearly established federal law was objectively unreasonable." Thus, under the "unreasonable application" clause, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."  The Court in Williams v. Taylor made it clear that the "contrary to" and "unreasonable application"clauses have independent meaning.

In the instant case,  the petitioner contends that his latest application for parole was denied on April 24, 2003, and relief from that denial was denied by the Pennsylvania Supreme Court on September 3, 2004. Thus, it would appear that he has exhausted the available state court remedies. Nor is the petition which was executed on June 2, 2005 time barred.

The petitioner now contends that the application of the amendments to the parole act, 61P.S. 331.1, constitute an ex post facto application as to him. "The Ex Post Facto clause of the United States Constitution applies to a statutory or policy change that 'alters the definition of criminal conduct, or increases the penalty by which a crime is punishable,'" Mickens-Thomas v. Vaughn, 321 F.3d 374 (3d Cir.), cert. denied 540 U.S. 875 (2003) citing to California v. Morales, 514 U.S. 499 (1995). As applies to parole, the Mickens-Thomas Court explained,

> prior to 1996, the Board's concern for potential risks to public safety could not be the sole or dominant basis for parole denial under the existing Guidelines. Considerations of public safety were already incorporated into its Guidelines analysis; the Board had to point to "unique" factors as a basis for its rejection of the Guidelines. Moreover, the Board had to weigh all factors, militating for and against parole, and make its decision on the totality of the factors pertinent to parole, and give appropriate weight to the interests of the inmate. Heavy foot application of one factor could not have been the basis of granting or rejecting parole. Policy declarations in and after 1996 demonstrate that Board stance shifted and that, indeed, post-1996 consideration of public safety become the dominant concern of the Board.

321 F.3d at 386.

The Court in Michen-Thomas further held that the parole decision as to the petitioner before the Court was made prior to the decision of the Pennsylvania Supreme Court in Winklespecht v. Pennsylvania Board of Probation and Parole, 813 A.2d 688 (Pa.2002) wherein it was held that:

> § 331.1 does not change Pennsylvania policy as to the criteria for parole "[n]or did the addition of this [new] language create a new offense or increase the penalty for an existing offense." Focusing on the added language to § 331.1 concerning "protect[ing] the safety of the public" and "assist[ing] in the fair administration of justice," the court concluded that these concepts have always been underlying concerns.
>
> This decision, made *after* the Board's action on Thomas's parole came too late to alter the Board's view of the statutory amendment on the outcome of this case. Not having the benefit of the Supreme Court decision, the evidence before us shows that the Board interpreted § 331.1 to mandate foremost the consideration of public safety. The Board mistakenly construed the 1996 statutory change to signify a substantive change in its parole function...

321 F.3d at 391.

Such is not the case here. The determination of the Board about which the petitioner complains was made on April 24, 2003. The decision in Winklespecht was rendered in 2002, and was thus presumptively part of the Board's consideration. In addition, it appears that in rendering its decision, the Board considered a wide variety of factors. [9]

However, in Cimaszewski v. Pennsylvania Board of Probation and Parole, 868 A.2d 416 (PA.2005), the Court retreated from the position it had taken in Winklespedcht. As the Court observed in Richardson v. Pennsylvania Board of Probation and Parole,    F.3d    , 2005 WL 2155505 (3d Cir. 2005):

---

[9] Id.

> Under *Cimaszewski*, in order to establish an ex post facto violation, the petitioner must provide "the requisite evidence that he faces a significant risk of an increase in punishment" by showing that "under the pre-1996 Parole Act, the Board would likely have paroled the inmate."

As a result, the Court concluded in Richardson that a retrospective change in the parole laws had occurred, and that the burden was on the petitioner to demonstrate that he was prejudiced as a result of that change. That is, the burden remained on the petitioner to demonstrate that as a result of the change in the law he was disadvantageous affected.

The decisions rendered denying Williams release on parole, were prior to 2003 and were rendered in very abbreviated form. However, prior to 2001, the generic rejection of release as in violation of "the fair administration of justice" was appropriate. Only after the court's decision in Voss v. Pennsylvania Board of Probation and Parole, 788 A.2d 1107 (Pa.Cmwlth.2001) did more detailed explanations become mandated. As applied to the decision rendered in petitioner's case on April 24, 2003, detailed findings were made, and it was expressly noted "having considered all matters required pursuant to the Parole Act of 1941, as amended, 61 P.S. § 331.1 et seq..." it was rendering an adverse determination.[10] Thus, the petitioner is unable to sustain his burden of demonstrating that he was disadvantageously affected by the subsequent changes in the law, and that as to him the changes were not an ex post facto application.

Accordingly, it is recommended that the respondents' Motion to Dismiss (Docket No. 6) be granted and that the petition of Brian Scott Williams for a writ of habeas corpus be dismissed and that a certification of appealability be denied for lack of a viable federal claim.

Within ten (10) days after being served, any party may serve and file written

---

[10] Id.

objections to the Report and Recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

                                        Respectfully submitted,

Dated: October 24, 2005                    s/ Robert C. Mitchell,
                                        United States Magistrate Judge